UNITED STATES DISTRICT COURT

WESTERN DISTRICT OF LOUISIANA

LAFAYETTE DIVISION

**MELANIE BOSWELL**              *      **CIVIL NO. 14-3183**

**VERSUS**                            *      **JUDGE DOHERTY**

**ROSEMONT REALTY, ET AL**     *      **MAGISTRATE JUDGE HILL**

<u>REPORT AND RECOMMENDATION</u>

Pending before the undersigned for report and recommendation is the Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) filed by defendant, South Point Operating Associates, Limited Partnership ("South Point"), on November 26, 2014. [rec. doc. 9]. Plaintiff, Melanie Boswell, proceeding *pro se*, filed opposition on December 17, 2014. [rec. doc. 14]. South Point filed a reply on January 13, 2015. [rec. doc. 18].

For the following reasons, I recommend that the motion be **GRANTED**.

<u>Background</u>

Bowell filed a Petition for Damages against South Point alleging claims for housing discrimination under The Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*.; the Clean Air Act of 1990; the General Duty Clause of the Occupational Safety Health and Administration; regulations of the Louisiana Department of Environmental Quality related to improper recovery of air conditioning units, unregulated release of toxins into the atmosphere, and unregulated exposure to mold in the workplace; the Louisiana

Environmental Whistleblower Act, LA. REV. STAT. § 30:2027; the Louisiana Whistleblower Act, LA. REV. STAT. § 23:967; breach of duty to provide a safe workplace under LA. REV. STAT. § 23:13; damages caused by ruin of a building under LA. CIV. CODE art. 2322, and intentional infliction of emotional distressed based on harassment and exposure to unsafe, hazardous working conditions.

Boswell alleges that on April 7, 2012, she began employment with South Point Apartments as a property manager. [Petition, ¶ 5]. As a property manager, her responsibilities included managing, hiring and terminating employees; scheduling repairs and ensuring that the apartment complex was managed in an "efficient, safe, legal, and ethical manner within a reasonable budget." [Petition, ¶ 6]. Boswell claims that within months of being employed, she cut unnecessary expenses and increased South Point's occupancy rate from 85% to 98%. [Petition, ¶ 7].

During Boswell's employment, she received a multitude of complaints from tenants regarding air conditioning leaks and mold in their apartments. [Petition, ¶ 8]. Additionally, these residents often reported flu-like symptoms, increased coughing and allergies while living in the complex. She personally observed residents and office and maintenance staff experience various allergic reactions and skin rashes reportedly caused by mold and mildew from apartments. [Petition, ¶ 13].

Boswell immediately notified defendants of the residents' complaints. [Petition, ¶ 9]. Jack Stahl Management, Co. ("Stahl"), which included Rusty Lober ("Lober"), Cam

Peron ("Peron"), and Cheryl Willoughby ("Willoughby"), told her to "never speak of mold" to any South Point resident orally or in writing. [*Id.*].

Due to illnesses and medical problems related to exposure from mold and mildew in the complex, maintenance technicians Michael Cameron ("Cameron") and Oray Breaux ("Breaux") were unable to work for an extended period of time. [Petition, ¶ 14]. Boswell also began to experience health problems, including allergic reactions such as inflammation and skin rashes, and episodic severe cases of uncontrollable "shakes." [Petition, ¶ 15].

Boswell also discovered that the pool water treatment facility, which was located less than 50 feet from her office, was inundated with mold, corroded copper pipes and electric wires, and chlorine fumes. [Petition, ¶ 16]. This condition was apparently caused by leaks, which caused "extremely high" humidity levels. The humidity level became so high that it caused the ceiling of a 7- x 7-foot storage room connected to her office to deteriorate and collapse. This collapse caused fumes to be released into Boswell's office.

Defendants were notified of the problem with the pool water treatment facility through personal visits and photos. [Petition, ¶ 17]. They stated that repairing the problem could wait, and requested more pictures. Boswell submitted more photos showing the poor condition of the pool treatment facility and storage room. Despite the photos, defendants failed to resolve the problem.

Boswell continued to receive tenant complaints about the mold and mildew in their apartments. [Petition, ¶ 18]. At one point, the mold in one apartment became so excessive that the entrance door and connecting wall began to fall, forcing the residents to crawl through their patio window to gain entry. After Boswell notified defendants about the issue, they requested photos, inspected the apartment, and got bids to fix the mold issue. [Petition, ¶ 19]. However, they did not allow Boswell to hire a contractor to complete the job.

Boswell's continuous exposure to mold and mildew caused her to seek medical treatment for her skin rashes, inflammation, nervous system complications, and other health issues. [Petition, ¶ 20]. Because claimant sought medical treatment, Peron and Willoughby "heavily scrutinized" Boswell and her maintenance staff.

On several occasions, Peron and Lober allegedly made comments blaming Cameron and Breaux's medical problems on their age. [Petition, ¶ 21]. Stahl apparently became concerned with the liability associated with the two maintenance employees. Shortly after Boswell notified defendants about Cameron and Breaux's medical problems, she was ordered to terminate Cameron.

Defendants refused to grant Boswell sick leave for doctors' appointments related to her work conditions. [Petition, ¶ 22]. They also involved her in work that would cause her to miss appointments. She was told that if she continued to request time off of work to seek treatment, she would be in jeopardy of having her pay docked and losing her job.

Because of the growing complaints from South Point's residents, Stahl's refusal to fix the complex's conditions, and her own health problems, Boswell contacted Robin Smith ("Smith"), senior vice president of Rosemont Real Estate Company in Santa Fe, New Mexico. [Petition, ¶ 23]. Boswell told Smith about her concerns regarding resident and staff's health problems caused by the air conditioning leaks, mold exposure and other hazardous conditions, as well as the overall declining condition of the property. Smith told Boswell that she would look into it, but Boswell never heard from her again.

Shortly after Boswell spoke to Smith, Boswell was terminated without explanation. [Petition, ¶ 25]. After being terminated, Boswell experienced depression, anxiety, and other mental issues. [Petition, ¶ 26]. She also experienced extreme difficulty finding employment.

Additionally, Boswell claims that she was "continually harassed" by Shahl's management, specifically Peron. [Petition, ¶ 10]. In October, 2012, she began receiving "constant threatening and harassing phone calls" from Peron. [Petition, ¶ 11]. On one occasion, she received over 52 phone calls from him within a 45-minute period. Additionally, Peron would often order Barbara Beaver ("Beaver"), property manager at Rosemont's Landing Apartments, to closely follow Boswell around while she worked at South Point. As a result of Peron's harassment, Boswell experienced stress and anxiety, chronic headaches and jaw pain, depression, mood swings and memory loss, requiring psychiatric treatment. [Petition, ¶ 12].

Further, Boswell claims that she witnessed defendants selectively approve tenants based upon race and "other discriminatory characteristics." [Petition, ¶ 27]. She also witnessed defendants discriminate against and subsequently terminate maintenance staff employees because of age.

On July 8, 2014, Boswell filed this action in the 15th Judicial District Court for the Parish of Lafayette, State of Louisiana, against Rosemont Realty d/b/a Rosemont Realty Property Management, LLC, Jack Stahl Company, LLC, South Point Property Apartments d/b/a South Point Property Associates and Cheryl Willoughby. On November 4, 2014, South Point removed this action on the basis of federal question jurisdiction purusuant to 28 U.S.C. § 1331, based on Boswell's claims under The Fair Housing Act and the Clean Air Act.

On November 26, 2014, South Point filed the instant motion to dismiss on the grounds that Boswell failed to state a cause of action for: (1) violation of the Louisiana Whistleblower Act, LA. REV. STAT. § 23:967; (2) violation of the Clean Air Act, 42 U.S.C. §§ 7401, *et seq*.; (3) breach of the General Duty Clause of the Occupational Safety Health and Administration; (4) violation of the Louisiana Department of Environmental Quality regulations; (5) breach of duty to provide a safe workplace, LA. REV. STAT. § 23:13, and (6) damages caused by ruin of a building, LA. CIV. CODE art. 2322. South Point further seeks dismissal of her claim under The Fair Housing Act, 42 U.S.C. §§ 3601, *et seq*., on the grounds of lack of standing.

**Standard for Motion to Dismiss Under Rule 12(b)(1) and 12(b)(6)**

Motions filed under Rule 12(b)(1) of the Federal Rules of Civil Procedure allow a party to challenge the subject matter jurisdiction of the district court to hear a case. *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001). A Rule 12(b)(1) motion to dismiss is the proper method with which to bring a motion to dismiss for lack of standing. *Harrison v. Safeco Ins. Co. of America*, 2007 WL 1244268, at *3 (E.D. La. Jan. 26, 2007) (*citing Ramming*, 281 F.3d at 161). The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *Ramming*, 281 F.3d at 161. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist. *Id*. (*citing Menchaca v. Chrysler Credit Corp*., 613 F.2d 507, 511 (5th Cir. 1980)).

The standard for review of a motion to dismiss under Rule 12(b)(1) is the same as that for a motion to dismiss pursuant to Rule 12(b)(6). *Harrison*, at *3. When deciding a Rule 12(b)(6) motion to dismiss, "[t]he 'court accepts all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *In re Katrina Canal Breaches Litig*., 495 F.3d 191, 205 (5th Cir. 2007) (internal quotations omitted) (*quoting Martin K. Eby Constr. Co., Inc. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir. 2004)).

"To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead 'enough facts to state a claim to relief that is plausible on its face.'" *In re Katrina Breaches Litig*., 495 F.3d at 205 (*quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 1974, 167 L.Ed.2d 929 (2007)). "Factual allegations must be enough to raise a right

7

to relief above the speculative level[.]" *Id*. (*quoting Twombly*, 550 U.S. at 555, 127 S.Ct. at 1965).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Twombly*, 550 U.S. at 555, 127 S.Ct. 1964-65 (citations, quotation marks, and brackets omitted) (emphasis added). The tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (*citing Twombly*, 550 U.S. at 555, 127 S.Ct. 1955). Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id*.

When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits. *Ramming*, 281 F.3d at 161.

## Analysis

### *Standing Under the Fair Housing Act*

In the Petition, Boswell asserts a claim under The Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, which is also referred to as Title VIII. *Thompson v. N. American Stainless, LP*, 562 U.S. 170, 131 S.Ct. 863, 869, 178 L.Ed.2d 694 (2011). South Point argues that Boswell lacks standing to bring this claim; therefore, her claim should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1).

The FHA applies to "any person who . . . claims to have been injured by a discriminatory housing practice." *L & F Homes and Development, L.L.C. v. City of Gulfport, Miss.*, 538 F. Appx. 395, 400 (5th Cir. 2013), *cert. denied*, 134 S.Ct. 1038, 188 L.Ed.2d 122 (2014); 42 U.S.C. § 3602(i)(1). The sole requirement for standing under the FHA is the Article III minima. *Lincoln v. Case*, 340 F.3d 283, 289 (5th Cir. 2003) (citation omitted).

Three elements are required to establish Article III standing: (1) an injury in fact – an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical; (2) a causal connection between the injury and the conduct complained of – the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court, and (3) the likelihood, as opposed to mere speculation, that the injury will be "redressed by a favorable decision." *Lujan v. Defenders of Wildlife*,

504 U.S. 555, 560-61, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d 351 (1992). The plaintiff bears the burden of establishing the three elements of standing – injury, causation, and redressability. *Berry v. Jefferson Parish*, 326 Fed.Appx. 748, 750 (5th Cir. 2009).

Here, South Point argues that Boswell has failed to meet even the first element – injury. In the Petition, Boswell alleges that defendants violated The Fair Housing Act by "engag[ing] in unlawful practices consisting of, but not limited to, intentional discriminatory treatment by selectively approving potential residents['] rental application. Additionally, Boswell reasonably believed several residents were treated differently due to their race." [Petition, ¶ 32].

Boswell's petition alleges that "potential residents" or "residents" were adversely affected by discrimination. It does not allege any injury to *her*, as the manager of the apartment complex. (emphasis added). As claimant cannot establish this initial element of standing, her claim under the FHA must fail.

### *Claims Under the Louisiana Whistleblower Statute*

South Point asserts that Boswell's claim under the Louisiana Whistleblower Act ("LWA"), LA. REV. STAT. § 30:967, is superseded by her claim under Louisiana's Environmental Whistleblower Act ("LEWA"), LA. REV. STAT. § 30:2027. Boswell argues that her complaint states facts to support claims under both statutes.

Boswell asserts claims under both the LWA and the LEWA for defendants' alleged retaliation after she reported environmental limitations – specifically, the presence

10

of mold – in the South Point complex. [Petition, ¶¶ 43-48]. These claims are supported by the same set of facts.

The LWA provides, in pertinent part:

A. An employer shall not take reprisal against an employee who in good faith, and after advising the employer of the violation of law:

(1) Discloses or threatens to disclose a workplace act or practice that is in violation of state law.

(2) Provides information to or testifies before any public body conducting an investigation, hearing, or inquiry into any violation of law.

(3) Objects to or refuses to participate in an employment act or practice that is in violation of law.

LA. REV. STAT. § 23:967.

The scope of § 23:967 is broad. *Collins v. State ex rel. Dept. of Natural Resources*, 2012-1031 (La. App. 1 Cir. 5/30/13), 118 So.3d 43, 52. It protects employees who disclose, or threaten to disclose, acts in violation of law, employees who testify or provide information about acts in violation of law, or employees who refuse to participate in an act which violates the law. *Id*.

The LEWA provides, in pertinent part, as follows:

A. No firm, business, private or public corporation, partnership, individual employer, or federal, state, or local governmental agency shall act in a retaliatory manner against an employee, acting in good faith, who does any of the following:

(1) Discloses, or threatens to disclose, to a supervisor or to a public body an activity, policy, practice of the employer, or another employer with whom

11

>there is a business relationship, that the employee reasonably believes is in violation of an environmental law, rule, or regulation.
>
>(2) Provides information to, or testifies before any public body conducting an investigation, hearing, or inquiry into any environmental violation by the employer, or another employer with whom there is a business relationship, of an environmental law, rule, or regulation.

LA. REV. STAT. § 30:2027.

The scope of LA. REV. STAT. § 30:2027 is more specific. *Collins*, 118 So.3d at 52. It only protects employees who disclose, or threaten to disclose, acts in violation of an environmental law or employees who testify or provide information about acts in violation of an environmental law. *Id*.

Under well-established principles of statutory construction, where there is a general statute and a specific statute addressing the same subject matter, such as LEWA and LWA, the more specific statute should govern. *Id*. (*citing Barber v. Marine Drilling Management, Inc*., 2002 WL 237848 (E.D. La. 2/15/02)). Thus, I find that § 30:2027 supersedes § 23:967 in regard to this claim.

Accordingly, Boswell's LWA claim should be dismissed.

### *Claim Under The Clean Air Act*

South Point asserts that Boswell's claim under the Clean Air Act ("CAA") must be dismissed because she failed to give timely notice of her intent to sue.

The CAA allows any citizen to bring a civil action against any person for an alleged violation of the CAA. 42 U.S.C. § 7604(a)(1). However, a plaintiff must provide

specific notice of intent to sue at least 60 days before filing a citizen suit. *Consolidated Environmental Management, Inc. v. Zen-Noh Grain Corp*., 981 F.Supp.2d 523, 541 (E.D. La. 2013) (citing *Hallstrom v. Tillamook County*., 493 U.S. 20, 31, 110 S. Ct. 304, 107 L. Ed. 2d 237 (1989)). Under the Clean Air Act's citizen suit provision, at least 60 days before filing suit, the citizen plaintiff must give "notice of the violation (i) to the Administrator, (ii) to the State in which the violation occurs, and (iii) to any alleged violator of the standard, limitation, or order" allegedly violated. 42 U.S.C. § 7604(b)(1)(A).

The purpose of the notice provision is to allow the Administrator and other officials to rectify inaction, and thus obviate the need for judicial recourse. *Friends of Earth v. Potomac Elec. Power Co.*, 546 F.Supp. 1357, 1361 (D. D.C. 1982). If the Administrator and the state do not themselves bring suit during the 60-day notice period, citizens may bring suit without joining the Administrator and state as necessary parties. *Id*.

Here, Boswell alleges that she notified Smith and other South Point management members of the environmental violations. However, this notice is insufficient under the CAA. As Boswell failed to give timely notice as required by the Act, her CAA claim should be dismissed.

### *Claim under General Duty Clause of the Occupational Safety Health Administration*

South Point argues that Boswell has no right to relief under the general duty clause of the Occupational Safety Health Administration ("OSHA"). The undersigned agrees, as plaintiff has no private right of action under the general duty clause of OSHA. *AFGE v. Rumsfeld*, 321 F.3d 139, 144-45 (D.C. Cir. 2003); *see also Jeter v. St. Regis Paper Co.*, 507 F.2d 973, 977 (5th Cir. 1975) ("Congress did not intend OSHA to create a new action for damages in favor of employees."). Accordingly, this claim should be dismissed.

### *Claim Under Louisiana Department of Environmental Quality Regulations*

South Point asserts that Boswell's claim under the regulations of the Louisiana Department of Environmental Quality ("LADEQ") should be dismissed because she failed to give written notice of her intent to file suit.

Louisiana law contains a citizen suit provision that allows "any person having an interest, which is or may be adversely affected, [to] commence a civil action on his own behalf against any person whom he alleges to be in violation" of Title 30, Subtitle II of the Louisiana Revised Statutes, which governs environmental quality, and the regulations promulgated thereunder. *Consolidated Environmental. Management*, 981 F.Supp.2d at 526-27 (*citing* LA. REV. STAT. § 30:2026(A)(1)). Like the citizen suit provision under the Clean Air Act, the Louisiana statute contains a notice provision that requires the plaintiff to give written notice of the violation to the Secretary of the LDEQ 30 days prior to commencing suit. *Id*. at 527; § 30:2026(B)(1).

Here, Boswell failed to give the appropriate notice under LADEQ regulations. Accordingly, this claim should be dismissed.

### *Claim for Breach of Duty to Provide a Safe Workplace*

Boswell asserts a claim for breach of defendants' duty to provide her with a safe work place under LA. REV. STAT. § 23:13. Specifically, she asserts that defendants often required her to work in "hazardous conditions" at South Point, and failed to "implement necessary safeguards and safety procedures to adequately protect Boswell from harm." [Petition, §§ 50-51]. South Point argues that this claim is barred, as the Louisiana Workers' Compensation Act is the exclusive remedy for claims related to Boswell's employment.

The Louisiana' Workers' Compensation statute relating to the employers' duty to provide a safe workplace provides, in pertinent part, as follows:

> Every employer shall furnish employment which shall be reasonably safe for the employees therein. They shall furnish and use safety devices and safeguards, shall adopt and use methods and processes reasonably adequate to render such employment and the place of employment safe in accordance with the accepted and approved practice in such or similar industry or places of employment considering the normal hazard of such employment, and shall do every other thing reasonably necessary to protect the life, health, safety and welfare of such employees.

LA. REV. STAT. § 23:13.

The Louisiana Worker's Compensation act is an employee's exclusive remedy for work-related injuries, precluding civil liability, except for injuries resulting from intentional acts. LA. REV. STAT. § 23:1032; *Horswill v. Louisville Ladder Corp.*, 1995

WL 517125, at *1 (E.D. La. Aug. 30, 1995).  Boswell has asserted that South Point is liable under § 23:13, which is a negligence-based claim.  *Diaz v. Superior Energy Services, LLC*, 2008 WL 3077071, at *9 (E.D. La. Aug. 4, 2008).  Section 23:1032 specifically excludes employees from bringing claims under § 23:13.  *Horswill*, at n. 1 ("Though La.R.S. 23:13 requires employers to provide safe work places, unless exempted by statute from the worker's compensation law, employees may not bring actions under R.S. 23:13.").

Accordingly, Boswell's claim for breach of duty to provide a safe workplace under §23:13 should be dismissed.

### *Claim for Damages Caused by Ruin to a Building*

Boswell asserts a claim under Louisiana Civil Code article 2322 for damages caused by ruin of a building.  Specifically, she alleges that defendants "had actual and constructive knowledge of South Point Apartment's hazardous conditions and failed to repair them."  [Petition, § 55].  She further contends that had defendants repaired these hazards, she would not have sustained damages.

Like § 23:13, La. Civil Code article 2322 is a negligence-based claim.  When an employee is injured as a result of an alleged defective condition of a building owned or operated by the employer, the employee's exclusive remedy lies in workers' compensation. *Claudio v. Silla Cooling Systems*, 10-52 (La. App. 5 Cir. 12/14/10); 55

So.3d 902, 908 (applying § 23:1032 and LA. CIVIL CODE art. 2322). Accordingly, this claim should be dismissed.

## Conclusion

For the foregoing reasons, I recommend that the Partial Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) filed by defendant, South Point Operating Associates, Limited Partnership [rec. doc. 9], be **GRANTED**, and that the following claims against South Point be **DISMISSED WITH PREJUDICE**: the Louisiana Whistleblower Act, LA. REV. STAT. § 23:967; the Clean Air Act, 42 U.S.C. §§ 7401, *et seq*.; breach of the General Duty Clause of the Occupational Safety Health and Administration; the Louisiana Department of Environmental Quality Regulations; breach of duty to provide a safe workplace, LA. REV. STAT. § 23:13; damages caused by ruin of a building, LA. CIV. CODE art. 2322, and The Fair Housing Act, 42 U.S.C. §§ 3601 *et seq*. The claims for violations of the Louisiana Environmental Whistleblower Act ("LEWA"), LA. REV. STAT. § 30:2027, and for intentional infliction of emotional distress will remain.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc.72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served

with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN FOURTEEN (14) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.** *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).

April 6, 2015 at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE